**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ANTONIO GUIMARAES,<br><br>    Plaintiff,<br><br>    v.<br><br>NATIONAL COLLEGIATE ATHLETIC<br>ASSOCIATION,<br><br>    Defendant. | | Case No. |

**COMPLAINT FOR PERMANENT INJUNCTION
REQUIRING CHANGES TO CORPORATE POLICY AND THE ELIMINATION OF
DIGITAL ACCESS BARRIERS PURSUANT TO 42 U.S.C. § 12188(a)(2)**

Antonio Guimaraes, ("Plaintiff") seeks a permanent injunction requiring a change in the

National Collegiate Athletic Association's ("Defendant" or the "NCAA") corporate polices to

cause Defendant's website to become, and remain, accessible.  In support thereof, Plaintiff

asserts as follows:

**INTRODUCTION**

1.      Plaintiff brings this action against Defendant and asserts that the NCAA's website

is not accessible to blind and visually impaired consumers in violation of Title III of the

Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA").  Plaintiff seeks a

permanent injunction to cause a change in Defendant's corporate policies related to its web-

based technologies so that Defendant's website will become, and will remain, accessible.  The

website domain at issue is www.ncaa.com (the "Website").

2.      While the increasing pervasiveness of digital information presents an

unprecedented opportunity to increase access to goods and services for people with perceptual or

motor disabilities, website developers and web content developers often implement digital technologies without regard to whether those technologies can be accessed by individuals with disabilities.  This is notwithstanding the fact that accessible technology is both readily available and cost effective.

3.    Blind and visually impaired consumers must use screen reading software or other assistive technologies in order to access website content.  Defendant's Website contains digital barriers which limit the ability of blind and visually impaired consumers to access the site.

4.    Plaintiff has patronized Defendant's Website in the past, and intends to continue to patronize Defendant's Website.  However, unless Defendant is required to eliminate the access barriers at issue, and required to change its policies so that access barriers do not reoccur on Defendant's Website, Plaintiff will continue to be denied full access to the Website as described, and will be deterred from fully using Defendant's Website in the future.

5.    The ADA expressly contemplates the type of injunctive relief that Plaintiff seeks in this action.  In relevant part, the ADA requires:

> [i]n the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities….Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy. . .

42 U.S.C. § 12188(a)(2).

6.    Because Defendant's Website has never been accessible and because Defendant does not have, and has never had, a corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring:

> a)  that Defendant retain a qualified consultant acceptable to Plaintiff ("Mutually Agreed Upon Consultant") who shall assist it in improving the accessibility of its

Website so that it complies with version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0 AA");

b)  that Defendant work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis calculated to achieve ongoing compliance with WCAG 2.0 AA;

c)  that Defendant work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis;

d)  that Defendant work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis;  and,

e)  that Defendant work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Website, along with an e-mail address and toll free phone number to report accessibility-related problems.[1]

## JURISDICTION AND VENUE

7.  This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 42 U.S.C. § 12188.

8.  Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

9.  Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

---

[1] Web-based technologies have features and content that are modified on a daily, and in some instances an hourly, basis, and a one time "fix" to an inaccessible website will not cause the website to remain accessible without a corresponding change in corporate policies related to those web-based technologies.  To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to web-based technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

**PARTIES**

10.     Plaintiff, Antonio Guimaraes, is, and at all times relevant hereto has been, a resident of the Commonwealth of Massachusetts, residing within this judicial district.  Plaintiff is, and at all times relevant hereto has been, legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

11.     Defendant National Collegiate Athletic Association is a non-profit association which is headquartered at 700 W. Washington Street, Indianapolis, Indiana 46206.  Defendant organizes the athletic programs of many colleges and universities in the United States and Canada, and helps more than 450,000 college student-athletes who compete annually in college sports.  In 2014, the NCAA generated almost a billion dollars in revenue.  Defendant offers goods and services to the public through its Website.   Defendant's website is a public accommodations pursuant to 42 U.S.C. § 12181(7).

**FACTUAL BACKGROUND**

12.     The Internet has become a significant source of information and a means for conducting everyday activities such as shopping, banking, etc. for both sighted and blind and visually-impaired persons, as well as individuals with other perceptual or motor disabilities.

13.     Blind individuals may access websites by using keyboards in conjunction with screen reader software or other assistive technologies that convert text to audio.  Screen reader software provides the primary method by which a blind person may independently use the Internet.  Unless websites are designed to be read by screen reader software or other assistive technologies, blind individuals are unable to fully access websites and the information, products and services available through the sites.

14.    The international website standards organization, W3C, has published WCAG 2.0 AA.  WCAG 2.0 AA provides widely accepted guidelines for making websites accessible to individuals with disabilities.  These guidelines have been endorsed by the United States Department of Justice and numerous federal courts.

15.    Through its Website, Defendant offers products for online sale, tickets for online sale, up-to-the minute sports scores, and live streaming of sporting events.  Defendant's Website also help users view and purchase products, read sports articles, research various NCAA teams and perform a variety of other functions.

16.    Plaintiff is legally blind and uses assistive technologies in order to access the Internet and read website content.

17.    Despite several attempts to use and navigate the Website, Plaintiff has been denied the full use and enjoyment of the facilities, goods and services available on the Website as a result of access barriers on the site.

18.    The barriers at the Website have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff from attempting to use Defendant's website.

19.    The access barriers at the Website include, but are not limited to, the following:

a)  Text equivalent for every non-text element is not provided;

b)  Row and column headers are not identified for data tables;

c)  Markup is not used to associate data cells and header cells for data tables that have two or more logical levels of row or column headers;

d)  When pages utilize scripting languages to display content, the information provided by the script is not identified with functional text that can be read by assistive technology;

e)  Electronic forms do not allow people using assistive technology to access the information, field elements and functionality required for completion and submission of the form;

f)  Information about the meaning and structure of the Website's content is not conveyed by more than the visual presentation of content;

g)  All pages are not readable and functional when the text size is doubled;

h)  When a user inputs information or interacts with a control, it may result in a substantial change to the page, the spawning of a pop-up window, an additional change of keyboard focus, or any other change that could confuse or disorient the user unless the user is informed of the change ahead of time;

i)  In content implemented using markup languages, elements do not have complete start and end tags, are not nested according to their specifications, and/or contain duplicate attributes;

j)  Skip navigation links are not provided to skip navigation and other page elements that are repeated across web pages; and,

k)  The purpose of each link cannot be determined from the link text alone, or from the link text and its context.

20.  If the Website were accessible, Plaintiff could independently use and navigate it.

21.  Though Defendant has centralized policies regarding the maintenance and operation of its Website, Defendant has never had a plan or policy that is reasonably calculated to make its Website fully accessible to, and independently usable by, blind people.

22.  Without injunctive relief, Plaintiff and other blind individuals will continue to be unable to independently use the Website in violation of their rights under the ADA.

### SUBSTANTIVE VIOLATION
### (Title III of the ADA, 42 U.S.C. § 12181 *et seq.*)

23.  The allegations contained in the previous paragraphs are incorporated by reference.

24.  Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment

of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

25. Defendant's website is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

26. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

27. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages or accommodations, which is equal to the opportunities afforded to other individuals. 42 U.S.C. §12182(b)(1)(A)(ii).

28. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: "a failure to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage or

7

accommodation being offered or would result in an undue burden."  42 U.S.C. §

12182(b)(2)(A)(ii)-(iii); *see also* 28 C.F.R. § 36.303(a).

29.     Title III requires that "[a] public accommodation shall furnish appropriate

auxiliary aids and services where necessary to ensure effective communication with individuals

with disabilities."  28 C.F.R. § 36.303(c)(1).  The regulation sets forth numerous examples of

"auxiliary aids and services," including "…accessible electronic and information technology; or

other effective methods of making visually delivered materials available to individuals who are

blind or have low vision."  28 C.F.R. § 36.303(b).

30.     The acts alleged herein constitute violations of Title III of the ADA, and the

regulations promulgated thereunder.  Plaintiff, who is blind and has a disability that substantially

limited the major life activity of seeing within the meaning of 42 U.S.C. §§ 12102(1)(A) and

(2)(A), has been denied full and equal access to Defendant's Website.  He has not been provided

services that are provided to other patrons who are not disabled, and/or has been provided

services that are inferior to the services provided to non-disabled persons.  Defendant has failed

to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations

are ongoing.

31.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth

and incorporated therein, Plaintiff requests relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for:

a.      A Declaratory Judgment that at the commencement of this action Defendant was
        in violation of the specific requirements of Title III of the ADA described above,
        and the relevant implementing regulations of the ADA, in that Defendant took no
        action that was reasonably calculated to ensure that its Website is fully accessible
        to, and independently usable by, blind individuals;

8

b.  A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504 (a) which directs Defendant to take all steps necessary to bring its Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its Website is fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiff is described more fully above;

c.  Payment of costs of suit;

d.  Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

e.  The provision of whatever other relief the Court deems just, equitable and appropriate.

Respectfully submitted,

Dated:  September 17, 2015          **BLOCK AND LEVITON, LLP**

By:  */s/ Jason M. Leviton*
Jason M. Leviton
Erica G. Langsen
155 Federal Street, Suite 400
Boston, MA 02110
Tel.: (617) 398-5600
Fax: (617) 507-6020
Jason@blockesq.com
Erica@blockesq.com

*Counsel for Plaintiff*

OF COUNSEL:

Benjamin J. Sweet
**CARLSON LYNCH SWEET &
KILPELA, LLP**
1133 Penn Avenue
Pittsburgh, Pennsylvania 15222
Tel.:  (412) 322-9243
Fax:  (412) 231-0246
bsweet@carlsonlynch.com